*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re JOHNSON/LEVEL, Minors.

UNPUBLISHED
October 19, 2023

No. 363741
Wayne Circuit Court
Family Division
LC No. 2018-001391-NA

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her three children, GJ, EL, and PL, under MCL 712A.19b(3)(b)(*ii*) (failure to prevent physical abuse and reasonable likelihood of future abuse if child returned to parent) and (j) (reasonable likelihood of harm to child if returned to parent). We affirm.

## I. BACKGROUND

The termination in this case arose from incident where respondent's romantic partner at the time, EIJ, physically abused PL in March 2022. Respondent is the biological mother of GJ, EL, and PL. PDL is the legal father of EL and the putative father of PL. Respondent and PDL used to be in a relationship but, as of the March 2022 incident, were no longer romantic partners. Instead, respondent, at that time, was in a relationship and living with EIJ, the legal father of GJ. When the trial court terminated respondent's parental rights in mid-October 2022, EL was four years old, PL was three years old, and GJ was one year old.

Respondent's relationship with EIJ was not her first abusive relationship. According to the second amended petition, in 2018, PDL strangled respondent, placed a pillowcase over her head, threw objects at her, and hit her while she held EL. EL was an infant at the time. One of the objects PDL threw at respondent hit EL in the head. This led to the removal of EL and PL from respondent's care, and to a three-year wardship over the two children. Respondent complied with her case service plan and, in early March 2022, the trial court terminated the wardships.

Around the same time the trial court terminated the wardships over EL and PL, Children's Protective Services (CPS) received a complaint alleging that PL had injuries on his buttocks. Sharonda Trammer, a CPS investigator, visited respondent's home shortly after CPS received the

-1-

complaint. Over the course of a few days, respondent gave three different accounts of what happened to PL. She initially indicated to Trammer that EL hit PL with a tablet. Respondent then told Trammer that PL had jumped off the couch and injured himself when doing so. Her third explanation was that EIJ hit PL on the buttocks while he was giving PL a bath, and that EIJ held PL under the water spout while hitting him. At the time, respondent was in a bedroom and heard PL scream. She went into the bathroom and asked EIJ what happened. EIJ then hit PL again—in respondent's presence—and respondent confronted EIJ. In response, EIJ hit respondent, causing her to fall and hit her back against the bathroom door and wall.

In mid-March 2022, after telling Trammer about EIJ's abuse, respondent agreed to a safety plan to keep EIJ out of her home and prevent him from having contact with her or her children. Respondent told Trammer that EIJ had already left the house. Trammer indicated she did not see him in the home after respondent agreed to the safety plan. But in late March 2022, when CPS workers went to respondent's home for a wellness check, respondent refused access to the children. Among CPS's concerns at the time were that EIJ was still in the home having contact with the children, and that respondent was being uncooperative. Despite attempts to do so, CPS could not verify whether EIJ was present in respondent's home.

In late March 2022, after the failed attempts to visit respondent's home, petitioner, the Michigan Department of Health and Human Services (MDHHS), conducted an emergency removal and took the children into protective custody. A day later, MDHHS, citing the fact that respondent resided with an abusive partner who had abused her and PL, filed a petition seeking removal of the children from respondent's care. The initial petition did not request termination of respondent's parental rights.

The trial court authorized the initial petition. At the end of April 2022, MDHHS filed an amended petition seeking termination of respondent's parental rights, based largely on the same allegations as in the first petition. In early July 2022, MDHHS filed a second amended petition, alleging it was contrary to the welfare of the children to remain in respondent's care because respondent was living with EIJ, despite his abuse. Relevant to respondent, it requested termination under MCL 712A.19b(3)(b)(*ii*) and (j). In early August 2022, a referee held a preliminary hearing on the second amended petition. After testimony from Trammer about the history of domestic violence between EIJ and respondent, EIJ's abuse of PL, and PL's injuries, the referee authorized the second amended petition.

A family court referee, whose findings and recommendations were later adopted by the trial court, held a two-day termination hearing in September 2022 and October 2022. At the hearing, Trammer testified about the late March 2022 incident, respondent's differing explanations, and the events leading to the removal of the children. She also testified about respondent's treatment plan in the previous case, which was in effect for three years and involved domestic violence and mental health services. Trammer noted that the abuse in this case occurred less than a week after respondent's completion of the previous treatment plan and the trial court's termination of its wardship of PL and EL. This, Trammer opined, demonstrated that no treatment plan could be ordered that would allow the safe return of the children to respondent's care. Trammer also believed termination was in the children's best interests because respondent failed to benefit from any of the services she previously completed. She also opined that respondent's future participation in therapy was not enough to keep the children safe.

Donna Howard, a foster care worker, also testified at the termination hearing. Howard reported that respondent acted appropriately the few times she visited her children during the pendency of this case. But based in part on pictures of PL's injuries, Howard expressed concerns about the children remaining in respondent's care. She also opined that, because of the abuse, it was not in the children's best interests to allow them to remain with respondent.

After the testimony and closing arguments, the trial court found by clear and convincing evidence that statutory grounds for termination existed under MCL 712A.19b(3)(b)(*ii*) and (j).[1] The trial court found respondent completed a domestic violence treatment plan in the previous case but, shortly after that case ended, she allowed EIJ around her children despite previous abuse by him during the pendency of the previous case. The court found that respondent followed the treatment plan in the previous case. But it concluded there was no treatment plan that could afford the children a safe return to respondent's home because she allowed PL to be abused shortly after completion of the previous treatment plan. The trial court further found that a preponderance of the evidence supported a finding that termination was in the best interests of PL, EL, and GJ. It found there was no plan that would afford the children's safe return to respondent's care, especially in light of her ongoing relationship with EIJ. The trial court entered orders adopting the referee's findings and terminating respondent's parental rights. This appeal followed.

## II. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence, as well as its determination that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. "Best interests are determined on the basis of the preponderance of the evidence." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

## III. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred when it terminated her parental rights under MCL 712A.19b(3)(b)(*ii*). We disagree.

A court may terminate parental rights under MCL 712A.19b(3)(b)(*ii*) if it finds by clear and convincing evidence that the child or a sibling suffered physical abuse and "[t]he parent who

---

[1] The family court referee presided over the preliminary hearing and termination hearing. Following the termination hearing, the referee made recommendations to the trial court, which the trial court adopted.

had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." The harm contemplated by MCL 712A.19b(3)(b)(*ii*) "must be caused by a parent's act or a nonparent adult's act and not merely contributed to by an unintentional omission." *In re LaFrance*, 306 Mich App 713, 725; 858 NW2d 143 (2014) (quotation marks omitted). MCL 712A.19b(3)(b)(*ii*) is therefore "intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser." *Id.* That is, it "addresses the harm occasioned by a parent who is unwilling or unable to protect his or her children from abuse." *In re Gonzales/Martinez*, 310 Mich App 426, 432; 871 NW2d 868 (2015). Evidence that a respondent puts their own desires above the needs of their children supports terminating parental rights under MCL 712A.19b(3)(b)(*ii*). *Id.*

It is, however, "impermissible for a parent's parental rights to be terminated solely because he or she was a victim of domestic violence." *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). But if the respondent's *own behavior* is harming the children or exposing them to harm, then termination may be appropriate. *Id.* This was the case in *Plump*, where the respondent mother exposed her children to drugs and unsuitable housing without heat. *Id.* at 271-272. She had also exposed her children to a partner who had physically and sexually abused them. *Id.* at 271-273. The respondent mother continued to associate with the abuser of both her children, in violation of her probation requirements. *Id.* at 272. In affirming termination, this Court noted that respondent's behavior directly harmed her children or exposed them to harm. *Id.* at 273.

This Court recently clarified its holding in *Plump* in *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326; 985 NW2d 912 (2022). In *Jackisch*, this Court emphasized that the key question when domestic violence is a rationale for termination is which party is the abuser. *Id.* at 334-335. This Court reiterated that "[t]he fact that respondent was or is a *victim* of domestic violence may not be relied upon as a basis for terminating parental rights." *Id.* at 334. "[M]ere references to domestic violence in the abstract cannot be used to support termination." *Id.* at 334-335. But "termination may be properly based on the fact that a respondent's own behaviors were directly harming the children or exposing them to harm." *Id.* at 334 (quotation marks and brackets omitted).

Here, the trial court did not clearly err when it found that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(b)(*ii*). As noted, this statutory ground is concerned with a parent who, although not an abuser, fails to protect their child from another parent or nonparent adult who is an abuser. *In re LaFrance*, 306 Mich App at 725. Statutory grounds for termination of respondent's parental rights existed because respondent had a pattern of involvement in abusive relationships, and failed multiple times to protect her children from her abusive partners. It is undisputed that EIJ physically injured PL. Respondent admitted that EIJ held PL under the water and spanked him, leaving marks on PL's buttocks. The hospital confirmed that the marks on PL were indicative of abuse.

The critical inquiry is whether respondent had an opportunity to prevent PL from being abused. See MCL 712A.19b(3)(b)(*ii*). In *Gonzales/Martinez*, this Court held that termination of the respondent's parental rights was appropriate under MCL 712A.19b(3)(b)(*ii*) where the respondent placed her desire to be with her abusive boyfriend over the needs of her children, and there was evidence she would continue to do so. *In re Gonzales/Martinez*, 310 Mich App at 432.

Respondent and EIJ had a history of domestic violence, demonstrating that respondent knew of EIJ's abusive tendencies before allowing him to spend time with her children. Respondent failed to protect her children from EIJ by letting him reside with her and interact with her children, despite knowing his abusive nature. By doing so, respondent put her desire to be with EIJ above the safety of her children. Respondent had the opportunity to protect her children from EIJ, but failed to do so, leading to PL's injuries. See *LaFrance*, 306 Mich App at 725 (explaining that MCL 712A.19b(3)(b)(*ii*) "is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser.").

This was not the first time respondent exposed her children to an abusive partner. PL and EL[2] were removed from respondent's care in the prior case because of domestic violence between respondent and PDL that culminated in harm to EL. Significantly, EIJ injured PL within a week of the trial court terminating its three-year wardship of PL and EL that was in place as a direct result of PDL's abuse. Even though respondent received domestic violence services during those three years, that did not stop her from bringing another abusive partner, EIJ, around her children. This pattern demonstrates a reasonable likelihood that respondent would continue to place her desires to be with a partner—though abusive—over the needs of her children. See *In re Gonzales/Martinez*, 310 Mich App at 432. The trial court therefore did not clearly err by finding clear and convincing evidence supporting termination of respondent's parental rights under MCL 712A.19b(3)(b)(*ii*).

*Plump* and *Jackisch* do not necessitate a different result. Though they may preclude termination based solely on a finding that a respondent is the victim of domestic violence, each case recognized that termination may be appropriate where a respondent's own behavior directly harms the children or exposes them to harm. See *In re Plump*, 294 Mich App at 273; *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 334. Such is the case here. Respondent remained in relationships with partners who abused her and her children, despite opportunities to remove herself and her children from those situations. This exposed her children to abuse and the risk of future abuse. Accordingly, termination was consistent with *Plump* and *Jackisch*.[3]

## IV. BEST INTERESTS

Respondent also argues that the trial court clearly erred when it found that termination was in her children's best interests. We disagree.

In termination proceedings, the trial court must weigh all the evidence, within the entire record, to determine the children's best interests. See *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "The focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks, citation, and brackets

---

[2] GJ was not removed because she was born in 2021.

[3] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address respondent's arguments related to MCL 712A.19b(3)(j). *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

omitted). The trial court must consider each child individually and assess the best interests of each child separately, unless the children are similarly situated. *In re TK*, 306 Mich App at 711 (citation omitted).

"To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. The trial court must state on the record or in writing its findings of fact and conclusions of law regarding its best-interest determination. See MCL 712A.19b(1); MCR 3.977(I)(1).

The trial court did not clearly err when it found that it was in the children's best interests to terminate respondent's parental rights. During the three years before termination, respondent had two relationships with abusive partners—both culminating in physical harm to her children. At the termination hearing, Trammer opined it would be in the children's best interests to terminate respondent's parental rights because respondent failed to benefit from the treatment plan she completed in the previous case. Respondent's failure to benefit led Trammer to believe no alternative treatment plan existed that could afford the children a safe return to respondent's care. Howard, the foster care worker who had been involved with respondent and her children for three years, opined it would not be in the children's best interests to remain with respondent because of the physical abuse. Though respondent received services for domestic violence during the three years PL and EL were temporary court wards following physical abuse by PDL, she immediately placed her children in the care of another domestic abuser (EIJ) after termination of the temporary wardships. EIJ harmed PL within a week of the trial court terminating the three-year temporary wardships of PL and EL. Respondent's repeated refusal to keep her children safe from known domestic abusers, evidencing poor parenting, supports the trial court's finding that termination of respondent's parental rights was in the children's best interests. See *In re White*, 303 Mich App at 713-714 (holding a parent's parenting ability and the safety of the children in respondent's care are factors to consider while conducting a best-interests finding).

Additionally, the children's need for permanency weighs in support of the trial court's finding that it was in their best interests to terminate respondent's parental rights. See *In re White*, 303 Mich App at 713-714 (holding the trial court should consider the children's need for permanency, stability, and finality while conducting a best-interests finding). PL and EL were temporary court wards for three years just before this case, and were removed a second time shortly after being returned to respondent's care. Considering respondent's failure to benefit from her previous treatment plan, immediately leaving her children in the care of known abuser who then harmed PL, it is unlikely respondent would provide the children with a stable living environment in the future. Accordingly, the trial court did not err in finding that there is no reasonable likelihood respondent can meet the children's need for permanency, stability, and finality. Sending PL and EL to foster care for a second time, and GJ for the first time, would delay their opportunity to have a permanent, stable family home. See *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013) (explaining that foster care may delay a child's ability to obtain a permanent, stable family home). At the time of termination, the foster parent the children were placed with planned to adopt all

three children, demonstrating that they would have a permanent, stable family home in the event of termination. The trial court gave EIJ a treatment plan, providing GJ with the opportunity to either have a permanent, normal family home with EIJ or with the foster parent willing to adopt the three children. The record therefore showed that the children's need for permanency, stability, and finality would be better met by termination of respondent's parental rights.

Respondent argues that the trial court erred when it found that it was in the children's best interests to terminate her parental rights because she had a bond with her children. Respondent did not offer any evidence describing their bond, nor did she raise any specific examples on appeal. Regardless, a parent's bond with their child is but one of several factors a trial court may consider when terminating parental rights. See *In re White*, 303 Mich App at 713-714. And to the extent respondent argues that the trial court failed to address her bond with her children, we have affirmed a lower court's finding that termination was in a child's best interests in light of the possibility of future harm to a child without reference to the bond between the child and parent. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011).

The trial court may also consider a respondent's prior compliance with their case service plan. *In re White*, 303 Mich App at 714. A failure to benefit from the plan, however, is evidence that "the parent will not be able to provide a child proper care and custody." *Id*. at 710. Failure to benefit from a service plan is also evidence that the child will be harmed if returned to the parent's home. *Id*. at 711. Although respondent successfully completed her treatment plan in the previous case, she failed to benefit from it. Respondent's failure to benefit from the plan led Trammer to opine that respondent would not benefit from any service plan. A parent's visitation history is also a relevant consideration. See *id*. at 714. Though she behaved appropriately when she visited her children, she only did so a few times throughout this case. Taken together, the best interest factors lead us to conclude that the trial court did not clearly err in finding that termination of respondent's parental rights was in the best interests of GJ, EL, and PL.

We affirm.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

-7-